TORRES ET AL., PLAINTIFFS AND RESPONDENTS, *v.* RUBIANES ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in an action for the recovery of hereditary property.

No. 977.—Decided April 28, 1914.

INHERITANCE—HEREDITARY RIGHTS—LAW GOVERNING INHERITANCE.—Hereditary rights both in testate and intestate successions are governed by the law in force at the time of the death of the ancestor.

SPANISH CIVIL CODE.—According to the Royal Decree of July 31, 1889, the Spanish Civil Code went into effect in this Island twenty days after its publication in the *Official Gazette* of the Island and said publication was concluded on December 12 of the same year.

WILL—CONSTRUCTION.—The words of the testator in a will should be construed in their literal sense, always endeavoring to give effect to all its different provisions.

INHERITANCE—JOINT WILL—HEIRS—MUTUAL HEIRS—SURVIVING SPOUSE MAY DISPOSE OF PROPERTY—SUBSTITUTE HEIRS—CONSTRUCTION.—The joint will in controversy, executed by the two spouses, contains the following clause: "The testators mutually institute and name themselves each as the sole and universal heir of the other, the surviving spouse to inherit, enjoy and use freely, without any restriction or limitation, all such property, rights and interests as the first spouse to die shall leave. And of all the property, rights and interests which may remain upon the death of the survivor, be it the husband or the wife, they institute and name Francisca and Pedro Pérez y García, sister and brother of the testator, * * * as the sole and universal heirs in equal shares of one-third; Margarita and Felícita Molinas y Villá, sisters of the testatrix, of another one-third likewise in equal shares, and Ormesinda or Ermesinda Morales y Rubianes, an impuberal minor, of the other one-third, the said inheritances to be possessed and used by them freely and without any restrictions." *Held:* That according to the said clause the testators mutually named each as the heir of the other to all their property in fee simple and not in usufruct, the survivor having power to dispose freely of the property of the deceased spouse by acts *inter vivos*, subject to the condition, however, that the property remaining at the death of the survivor should pass to the substitute heirs designated in the said clause.

ID.—JOINT WILL—CONSTRUCTION—USUFRUCTUARY ·HEIR.—Upon an examination of the clause quoted from the will in litigation, it was held that the words ''inherit, enjoy and use'' cannot be construed in the sense that the surviving spouse was named as a usufructuary heir only, nor. that the words ''freely without any restriction or limitation'' refer to the restrictions which the Civil Code imposes upon usufructuary heirs.

ID.—INSTITUTION OF HEIR FOR A DAY CERTAIN—CONDITIONAL INSTITUTION OF HEIRS.—According to Law VIII, Title IV, *Partida* 6, institutions of heirs to take effect on a specified day or on a day which must inevitably come, although it is not known when, such, for example, as upon the death of the person, are the same as unconditional institutions, while institutions of heirs subject to the happening of a doubtful or uncertain event have the character of conditional institutions.

ID.—CONDITIONAL · INSTITUTION OF HEIRS.—It was held that the clause quoted contains a conditional institution of heirs in favor of Margarita and Felícita Molinas, the plaintiffs' ancestors, depending upon the happening of two events—the death of the surviving spouse and the existence of property at the time of said death—the second event being the one which gave to the institution of said heirs the conditional character, for the survivor might or might not leave property.

ID. — UNCONDITIONAL INSTITUTION OF HEIRS — CONDITIONAL INSTITUTION OF HEIRS.—In accordance with Law VIII, Title IV, and Law XXXIV, Title IX of *Partida* 6, the effect of an unconditional institution of heirs is the creation of rights transmissible to the heirs of the first heirs upon the death of the testators, while under conditional institutions the heirs of the first heirs acquire no rights until the condition is complied with.

ID.—CONDITIONAL INSTITUTION OF HEIRS—NON-FULFILMENT OF CONDITION.—The plaintiffs in the case at bar acquired no hereditary right from their ancestors, Margarita and Felícita Molinas, who were conditional heirs, because the said ancestors died before the condition that the surviving spouse should leave property at his death had been complied with.

ID.—SUBSTITUTE HEIR—CAPACITY TO· ACCEPT INHERITANCE.—A testamentary provision by which a third person is entitled to the whole or part of the residue of an inherited property at the death of the heir embodies a kind of conditional substitution in favor of such third person to which should be applied the rules and legal provisions which govern this kind of institution of heirs and .by which it is an indispensable requisite that both the heir and the substitute shall have the legal capacity to accept the inheritance upon the fulfilment of the condition imposed by the testator.

ID.—HEREDITARY RIGHTS—CONSTRUCTION OF LAW.—Pursuant to Rule 12 of the Transitory Provisions of the Spanish Civil Code formerly in force in Porto Rico, the rights to the inheritance of Dolores Molinas y Villá, from whom the plaintiffs derive their right, must be governed by the legislation in force prior to the said code, and neither the second part of Rule 1 nor, consequently, section 799 of the Spanish Civil Code, is applicable to this case, because both Rule 12 and section 3 of the same code prohibit it.

The facts are stated in the opinion.

*Mr. José A. Poventud* for the respondents.

*Mr. José Tous Soto* for the appellants.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On July 15, 1911, Carmen Torres y Molinas, Julia Torres y Molinas, Rafaela Torres y Molinas, Francisco Fernández y Molinas, Enriqueta Fernández y Villá, Adela Aguilar y Fernández, Rosa Eustasia Puig Subirá y Molinas, Juan Puig Subirá y Molinas, Petrona Puig Subirá y Molinas, Manuel López Sagredo y Puig Subirá, María Luisa López Sagredo y Puig Subirá, Ana Margarita López Sagredo y Puig Subirá and María Mercedes López Sagredo y Puig Subirá filed an amended complaint in the District Court of Ponce against Encarnación Rubianes, Ormesinda Morales y Rubianes, Francisca Dolores Morales y Rubianes and Felipe Gautier, alleging the following as facts:

1. That the spouses Francisco Pérez García and Dolores Molinas y Villá owned in fee simple as community property since December 19, 1865, an urban property described in the said complaint which the husband had purchased by a deed of the said date and during his wedlock.

2. That on August 24, 1889, the spouses Pérez García and Molinas Villá executed a joint nuncupative will before Notary Joaquín Mayoral of Ponce, in which "they mutually instituted and named themselves each as the sole and universal heir of the other, the surviving spouse to inherit, enjoy and use freely without any restriction or limitation, all such property, rights and interests as the first spouse to die should leave. And of all the property, rights and interests which should remain upon the death of the survivor, be it the husband or the wife, they instituted and named Francisca and Pedro Pérez y García, sister and brother of the testator and residents of Loja, as the sole and universal heirs in equal shares of one-third, Margarita and Felícita Molinas y Villá, sisters of the testatrix, of another one-third likewise in equal shares, and Ormesinda or Ermesinda Morales y Rubianes, an impuberal minor, of the other one-third,

the said inheritances to be possessed and used by them freely and without any restrictions.''

3. That Dolores Molinas y Villá died in Ponce on November 7, 1889, from which date the surviving spouse had the possession and use of the urban property mentioned as the sole usufructuary thereof under the aforesaid will and remained in possession until June 19, 1893, when he died without having disposed of all or any part of the property by an act *inter vivos.*

4. That Felícita Molinas y Villá died in the said city of Ponce on May 4, 1891, leaving a will executed on April 18 of the same year in which she devised and bequeathed to plaintiffs Carmen, Julia and Rafaela Torres y Molinas, her nieces, in equal shares, one-half of the inheritance coming to her from her deceased sister, Dolores Molinas y Villá, by reason of the joint nuncupative will of the latter, and instituted and named as her sole and universal heirs of the other half of said inheritance and of the residue of her property, her son, Francisco Fernández Molinas, and her grandchildren, Enriqueta Fernández y Villá and Adela Aguilar y Fernández, in equal shares. The other heiress named in the said joint will, Margarita Molinas y Villá, also died in Ponce on November 2, 1892, intestate, her children, Rosa Eustasia Puig Subirá y Molinas, Juan Puig Subirá y Molinas and Petrona Puig Subirá y Molinas, and her grandchildren, Manuel López Sagredo y Puig Subirá, María Luisa López Sagredo y Puig Subirá, Ana Margarita López Sagredo y Puig Subirá and María Mercedes López Sagredo y Puig Subirá, plaintiffs herein, being her intestate heirs. .

5. That Francisco Pérez García made another will on June 5, 1893, in which he named as the sole and universal heirs in equal parts of his property, rights and interests, defendants Ormesinda Morales y Rubianes, married to co-defendant Felipe Gautier, and Francisca Dolores Morales y Rubianes, in fee simple, leaving the usufruct thereof for life to the other defendant, Encarnación Rubianes. By virtue of

that will, after the death of the testator on June 19, 1893, the said three defendants recorded the whole of the said urban property in the Registry of Property of Ponce in their own names in the manner stated, with knowledge of the rights of the plaintiffs and their ancestors as regards the undivided half belonging to them in the third part of the said property, the four defendants also having had possession of the said property and having enjoyed its rents, products, benefits and profits without good faith or just title to the part belonging to the plaintiffs, from July, 1893, up to the date of the filing of the complaint.

6. That the said undivided sixth part of the said property is worth $2,000, and the rents, products, benefits and profits from the same during the time the plaintiffs have been deprived of the possession and enjoyment thereof, amount to $3,180.

7. That by reason of the detention the plaintiffs have also suffered additional damages which they estimate at $1,000.

8. That since the death of Francisco Pérez García and by virtue of his last will, the first three defendants, knowing of the rights of the plaintiffs, have collected approximately the sum of $2,000 from Félix Jorge in part payment of a debt arising from the sale of a property belonging to the conjugal partnership of the spouses Pérez García and Dolores Molinas y Villá, which sale was made while they were living, and Pérez García having made no disposition in an act *inter vivos* of the amount owing by Félix Jorge, one-sixth of the same belonged to the plaintiffs when collected.

The complaint concludes with the prayer that judgment be rendered in favor of the plaintiffs and against the defendants, decreeing:

1. That the undivided half of a third part of the urban property in controversy belongs to the plaintiffs in proportion to the interest of each one and that therefore the defendants be obliged to place the same at the free disposal of the

plaintiffs as well as to deliver to them one-sixth of the money collected from Félix Jorge.

2. That the will executed by Francisco Pérez García on June 5, 1893, has no legal force or effect as regards the rights of the plaintiffs to their joint interest in the urban property and their share in the money collected from Félix Jorge by the defendants; that consequently record No. 2 of the whole urban property entered by the defendants in their names and any other subsequent record, are null and void and that such records in the registry of property be canceled.

3. That the defendants should pay to the plaintiffs the sum of $3,180 for the rents, products, profits and benefits from their joint ownership of the one-sixth part of the urban property in controversy.

4. That the defendants are also obliged to pay to the plaintiffs the sum of $1,000 as additional damages for the unlawful detention of their joint-ownership interest, and that they must pay besides all the costs, disbursements and attorney's fees accruing in the action.

The defendants demurred to the foregoing complaint on the following grounds:

(*a*) Misjoinder of actions as follows: Annulment of institution of heirs; real action of ejectment; personal action for the recovery of money;

(*b*) That the complaint is uncertain;

(*c*) That the complaint does not state facts sufficient to constitute a cause of action;

(*d*) That the causes of action have prescribed;

(*e*) Misjoinder of parties defendant in improperly joining Felipe Gautier as a party defendant.

The demurrer was overruled on all its grounds by a decision of October 11, 1911, and the trial having been had, the District Court of Ponce rendered judgment on January 29, 1913, as follows:

"That the plaintiffs are the owners in fee simple of the sixth part of the urban property described in the complaint, in common joint-ownership, and therefore the court decrees that the will made by Francisco Pérez García on June 5, 1893, before Notary Rafael León of Ponce, is null and void, as is also the record of the whole property made by defendants Encarnación Rubianes, Ormesinda Morales y Rubianes and Francisca Dolores Morales y Rubianes in their own names in so far as one or the other may affect the rights of the plaintiffs in the joint-ownership in the property decreed to them, and the court orders further that the said defendants and Felipe Gautier put the aforesaid joint-ownership interest at the free disposition of the plaintiffs and that defendants Encarnación, Ormesinda and Francisca pay to the plaintiffs the sum of $1,676 and the costs, disbursements and attorney's fees in the suit."

From that judgment the attorney for the defendants appealed to this court, alleging among other legal grounds in support of the appeal that the lower court erred in holding that the plaintiffs have a cause of action to recover the inheritance, or a part thereof, of Dolores Villá under the will of the spouses Pérez-Molinas. If that error has been committed, it alone is sufficient to justify the reversal of the judgment and therefore the consideration of the other errors would be unnecessary.

In order to determine whether the facts alleged in the complaint constitute a cause of action, it is necessary to ascertain first what statutes should govern the rights of the plaintiffs with regard to the inheritance of Dolores Molinas y Villá, whether the Spanish Civil Code or the statutes in force prior to that, *i. e.,* the *Código de Partidas.*

Rule 12 of the Transitory Provisions for the application of the Civil Code of 1889 reads as follows:

"Rights to the inheritance of a person who may have died, with or without a will, before this code was in force, shall be governed by prior legislation. The inheritance of those who died after that time, with or without a will, shall be awarded and divided according to this code, but complying, in so far as the latter permits it, with the testamentary provisions. Therefore legal portions, better-

ments, and legacies shall be respected; but their amounts shall be reduced when it is not possible in any other manner to give to each participant in the inheritance the share pertaining to him, according to this code."

The first sentence of the rule quoted does nothing more than extend the first sentence of Rule 1 of the Transitory Provisions to hereditary rights in an express manner, and according to that rule, rights arising under legislation prior to the code out of acts performed while it was in force, shall be governed by said previous legislation even if the code should regulate them in a different manner or does not recognize them; and in the second part of Rule 12 in connection with Rule 2, which provides that acts and contracts done and entered into while the former legislation was in force and which were valid under it, shall have full effect according to the same, subject to the limitations set out in the Transitory Provisions providing that the rights of the participants in an inheritance of a person who died with or without a will after the Civil Code went into effect shall be settled and partitioned in accordance with the said code, provided that such testamentary provisions as there may be shall be complied with so far as the code may permit. The reason for all this is obvious. In matters of inheritance no right is acquired until the succession is established—that is, until the death of the ancestor—and therefore that right must be adjusted to the law then in force.

Now, according to the allegation of the complaint, Dolores Molinas y Villá died on November 7, 1889, and on that date the Civil Code was not in force in Porto Rico, because, according to the Royal Decree of July 31, 1889, it was to take effect in this Island twenty days after its publication in the *Official Gazette* of the Island and as its publication was not concluded until December 12, 1889, it results that it went into effect after her death; therefore the rights to the inheritance of

the said Dolores must be governed by the legislation in effect prior to the said code.

As the plaintiffs in their character as successors in interest of Felícita and Margarita Molinas y Villá cannot claim rights to the property in controversy which the latter did not possess at the death of Francisco Pérez García, we must consider now whether Felícita and Margarita acquired, according to said legislation, hereditary rights by virtue of the will of the spouses Francisco Pérez García and Dolores Molinas y Villá when Pérez García died. The lower court holds that they did not and we agree with it.

An examination of the language used by Francisco Pérez García and Dolores Molinas y Villá in naming their heirs in their joint will of August 24, 1889, according to the second allegation of the complaint which has been accepted by the defendants and also proved by documentary evidence at the trial, shows at a glance that the institution of heirs was double, to wit, one by each spouse in favor of the other and the other by the two spouses in favor of persons designated by name. By the first institution of heirs *the testators mutually instituted and named themselves each as the sole and universal heir of the other, the surviving spouse to inherit, enjoy and use freely, without any restriction or limitation, all such property, rights and interests as the first spouse to die should leave.* Considered alone, this institution of heirs, in the broad and general manner in which it was made, confers upon the surviving spouse the right to the enjoyment and use of the property of the other spouse whose heir he becomes, freely and without any restriction or limitation.

But as in the will the spouses imposed upon each other a limitation regarding the property, rights and interests which one was to inherit from the other by making a second institution of heirs of all the property, rights and interests remaining at the death of the surviving spouse, we must harmonize the two.

Construing the words of the testators in their literal sense and always endeavoring to give effect to both institutions of heirs, as is required by the rules of legal hermeneutics, it must be concluded that Francisco Pérez and Dolores Molinas mutually named each other as heirs of all their property with full power to dispose of the same by acts *inter vivos*, it being understood that the property remaining at the death of the survivor proceeding from the one who died first should pass to the heirs instituted in the second place in the will. The survivor could dispose of his own property both by acts *inter vivos* and by will.

The testators mutually named each other as heirs of their respective property in fee simple and not in usufruct; for, in the second case, if that had been their intention the heirs named in the second institution would have been named as heirs of all the property which the surviving spouse inherited from the other and not of that which the survivor might leave.

We cannot accept the allegation of the respondent that the words used in the institution of heirs, "inherit, enjoy and use," refer to a usufructuary interest and the other words, "freely without any restriction or limitation," to the restrictions which articles 467, 468, 491 and 498 of the old Civil Code impose upon all usufructuaries, *i. e.*, the making of an inventory, giving bond, liability for depreciation in case of lease, etc. To accept such a construction would be to violate openly the letter of the testamentary clause.

It cannot be maintained that the testators mutually named each other as fiduciary heirs with the obligation of delivering to the heirs instituted in the second place the residue of the property left by the last to die after the withdrawals which the fiduciary may make lawfully for expenses, profits and improvements, pursuant to article 783 of the old Civil Code. Such a theory is in open conflict with the character of proprietary heirs with which the testators vested themselves,

with the power to dispose of the property inherited by acts *inter vivos,* as we have already held, and is besides plainly repugnant to the literal wording of the institution of heirs in which there is nothing to indicate the existence of a trust with which the surviving spouse should comply.

Moreover, the first institution of heirs was unrestricted, for it was not subject to any suspensory condition upon whose fulfilment its operation depended.

As to the character of the institution of heirs made in favor of Felícita and Margarita to take effect at the death of the surviving testator, they to inherit a third part of all the property, rights and interests remaining at the death of the survivor, in equal shares, we understand that the said institution was conditional—that is to say, that it was subject to the happening of two events, namely, the death of the survivor and the existence of property at the time of said death. The first condition was bound to occur because the death was inevitable; but not the second, because the survivor could dispose of all the property remaining at the death of the other without any limitation or restriction, hence the existence of property at the death of the survivor was not sure. That second condition and not the first is what gives to the institution of Felícita and Margarita as heirs a conditional character, for, according to Law VIII, Title IV, *Partida* 6, as construed by the Supreme Court of Spain, institutions of heirs to take effect on a specified day or on a day which must inevitably come although it is not known when, such as upon the death of a person, are the same as unconditional institutions, but this is not the case with institutions of heirs conditioned upon the happening of a doubtful or uncertain event. Judgments of the Supreme Court of Spain of April 27, 1888, 63 Jur. Civ., 696; December 21, 1888, 64 Jur. Civ., 867; July 4, 1896, 80 Jur. Civ., 48; March 9, 1899, 86 Jur. Civ., 401.

The effect of an unconditional institution of heirs is the

creation of rights transmissible to the heirs of the first heirs
upon the death of the testators, while under properly condi-
tional institutions the heirs acquire no rights until the condi-
tion is complied with. We refer to the statutes applicable
to the case, which, as before stated, are those which were in
force prior to the Spanish Civil Code, namely, Law VIII,
Title IV and Law XXXIV, Title IX, *Partida* 6.

Applying to the case at bar the principles already laid
down, it is necessary to conclude that Dolores Molinas y
Villá having died on November 7, 1889, her husband, Fran-
cisco Pérez, under the joint will executed on August 24 of
the same year, inherited her property in fee simple with-
out any other limitation than that stated in the said will in so
far as regards the property remaining, and as Margarita and
Felícita died before Pérez died and the condition under which
they were made heirs had not been complied with, they ac-
quired no right to the property of Doña Dolores remaining
at the death of Pérez.

In corroboration of the fact that Francisco Pérez García
was not a usufructuary heir but the absolute heir to the estate
of his wife, Dolores Molinas y Villá, with the right to dis-
pose of the property of the deceased by acts *inter vivos,* we
may cite the judgment of the Supreme Court of Spain of
December 31, 1872, 127 Jur. Civ., 166. That was a case where
Mateo Linares and his wife, Manuela Aubert, in a will exe-
cuted on November 11, 1859, after bequeathing to Francisco
Linares, who was living with them, the sum of $200 to be
delivered to him if for any reason he should cease to live
with the surviving spouse, they mutually named themselves
heirs each of the other of the residue of all their property,
rights, interests and future inheritances, providing that upon
the death of the survivor all the remaining property should
pass to the said Francisco Linares.

In construing that institution of heirs the said court held
that the words used by Manuela Aubert in designating her

husband, Mateo Linares, as her sole and universal heir in the joint will executed by them on November 11, 1859, were so ample, clear and conclusive that there could be no doubt that her intention was to authorize him to make full use of the powers which as said sole and universal heir she conferred upon him, including the right to dispose freely during his life of all the property belonging to the testatrix, for otherwise she would have used other and less general and absolute terms, designating him as the usufructuary heir or imposing some other limitation. See also the judgments of the Supreme Court of Spain of June 21, 1872, 26 Jur. Civ., 16; November 17, 1884, 56 Jur. Civ., 470. The judgments of the same court of March 7, 1876, 33 Jur. Civ., 441, and March 22, 1890, 67 Jur. Civ., 367, are not applicable to the present case. ✓

And in support of the fact that Margarita and Felícita were designated as conditional heirs and did not acquire any right to the property of testatrix Dolores because they died prior to the fulfilment of the condition under which they were designated as heirs in the second place, we may cite the judgment of the Supreme Court of Spain of July 10, 1878, 40 Jur. Civ., 184, in which it was held that according to the decisions of the courts a testamentary provision by which a third person inherits the whole or a part of the residue of an inheritance upon the death of the heir, contains a kind of conditional substitution in favor of such third person to which should be applied the rules and legal provisions governing this kind of designation of heirs and by which it is an indispensable requisite that both the heir and the substitute shall have the legal capacity to accept the inheritance upon the fulfilment of the condition imposed by the testator, and, consequently, the substitute who dies while such condition is pending does not acquire and cannot transmit any right by will or by succession. The same doctrine is laid down in the judgment of June 15, 1868, 18 Jur. Civ., 30. See also the judgments of the Supreme Court of Spain of December 10,

1864, 10 Jur. Civ., 443; Feb. 6, 1865, 11 Jur. Civ., 130; April 24, 1867, 15 Jur. Civ., 396; June 27, 1867, 16 Jur. Civ., 57; September 28, 1867, 16 Jur. Civ., 184; January 31, 1887, 61 Jur. Civ., 172. The judgment of April 4, 1866, 13 Jur. Civ., 399, cannot be invoked *in contra.*

The plaintiffs, some of whom are legatees and others testamentary or intestate heirs of Margarita and Felícita Molinas y Villá, could not acquire from their predecessors in interest the right which they claim to the property of Dolores Molinas y Villá by virtue of the will executed by the latter and her husband, Francisco Pérez García, on August 24, 1889, because they died prior to the fulfilment of the condition imposed by Dolores, therefore could not transmit the same to their heirs and legatees by will or by succession. *Nemo dat quod non habet.*

The lower court holds in its judgment that article 799 of the Spanish Civil Code is applicable to the present case, pursuant to the second part of Rule 1 for its application. The said article and rule read as follows:

"Article 799.—Conditions precedent (suspensory) do not prevent the heir or legatee from acquiring their respective rights and transmitting them to their heirs, even before their fulfilment."

"Rule 1.—Rights arising under the legislation prior to the code, out of matters carried out (acts performed) under its rule, shall be governed by said prior legislation, even if the code regulates them in a different manner, or does not recognize the same. *But if the said right is declared for the first time in this code, it shall be effective at once, even when the act which gave rise thereto may have taken place under the prior legislation, provided it does not prejudice other acquired rights having the same origin.*"

Rule 1 quoted above is not wholly applicable to hereditary rights, as these are subject to a special rule, *i. e.,* to Rule 12 hereinbefore quoted, the first part of which, as we have stated, is limited to extending the provisions of the first part of Rule 1 to rights to the estate of a person dying with or without a will before the code went into effect. If the legisla-

tors, had intended that the second part of Rule 1 should be applicable to cases of inheriting from a person who had died with or without a will before the Spanish Civil Code went into effect, they would have ordered this expressly in Rule 12. They did not do so and we must admit therefore as a general rule, regardless of the exception contained in the second part of Rule 1, that rights to the inheritance of a person dying with or without a will before the code went into effect must be governed by the previous legislation.

And this is properly so, because, according to article 657 of the same code, rights to the succession of a person are transmitted from the moment of his death, and, according to article 661, heirs succeed the deceased in all his rights and obligations by the mere fact of his death. The succession begins at the death of the testator or person leaving the inheritance and that is the date to be taken into account in order to determine the rights of succession.

It is impossible to admit that the testamentary provision whence the plaintiffs derive their alleged right and which, according to the legislation prior to the Civil Code, had no legal life or effect, acquired by virtue of article 799 of the said code an existence which it did not have before.

An exception so marked and so contrary to the provision of article 3 of the old Civil Code to the effect that laws shall not have a retroactive effect unless it is so provided therein, is inadmissible by simple construction or deduction and it should have been so provided expressly in said article 799 if it were the intention of the legislators to give it retroactive effect and in case the said effect were not antagonistic to the transitory provision to the effect that the changes introduced in the code prejudicing rights acquired according to prior civil legislation shall have no retroactive effect.

But the fact is that according to the very exception stated in the second part of Rule 1 by virtue of which it is sought to apply article 799 of the Spanish Civil Code to the case at bar, the said article is not applicable, because, if Felícita and

Margarita never acquired the rights established in their favor in the will of the spouses Dolores Molinas y Villá and Francisco Pérez García, such rights could be claimed by someone who would be prejudiced by the provisions of article 799 of the Spanish Civil Code.

Understanding as we do that article 799 of the old Civil Code does not govern the present case, it is unnecessary to discuss how that article could be harmonized with the wording of artcle 759, which provides that the heir or legatee who should die before the condition is fulfilled, even though he survive the testator, transmits no rights whatsoever to his heirs.

For the foregoing reasons we are of the opinion that the plaintiffs as the heirs of Felícita and Margarita Molinas y Villá have no cause of action to claim rights to the inheritance left by Dolores Molinas y Villá derived from the will made by her and her husband on August 24, 1889, which lack of cause of action is deduced from the facts stated in the complaint, and as all the pronouncements prayed for therein are based on the supposed existence of those rights, the judgment appealed from should be reversed and another judgment rendered dismissing the complaint in all its parts and releasing the defendants from the effects thereof, without special imposition of costs.

*Reversed.*

Justices Wolf, del Toro and Aldrey concurred.